NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
CHANEL, INC.,                           :
                                        :
       Plaintiff,                       :
                                        :   Civil Action No. 07-3309 (JAG)
       v.                               :
                                        :   OPINION
YARON GUETAE a/k/a MIKE GUETAE,         :
BARUCH BARAKAT, and SIP TRADING         :
INC. individually and jointly d/b/a GO  :
ELEGANT and GOELEGANT.COM, and          :
DOES 1-10,                              :
                                        :
       Defendants.                      :
_____:

**GREENAWAY, JR., U.S.D.J.**

       This matter comes before this Court on the renewed motion, (Docket No. 17), filed by plaintiff Chanel, Inc. ("Plaintiff" or "Chanel"), seeking entry of default judgment against defendants, Yaron Guetae a/k/a Mike Guetae, Baruch Barakat, and SIP Trading, Inc., individually and jointly doing business as Go Elegant and GoElegant.com (collectively, "Defendants"), pursuant to FED. R. CIV. P. 55(b). For the reasons set forth below, this motion shall be granted.

**I. FACTS**

       In late 2006, as part of its investigation into the sale of counterfeit merchandise, Chanel retained Robert Holmes ("Holmes") of IPCyberCrime.com, a Texas-based private investigation

firm.  (Decl. of Adrienne Hahn Sisbarro, attached as Ex. L to Pls.' Mot. for Entry of Default J. [hereinafter "First Hahn Decl."] ¶ 10; Decl. of Robert Holmes, attached as Ex. B to Pls.' Mot. for Entry of Default J. [hereinafter "First Holmes Decl."] ¶¶ 2–3.)  In November of 2006, Holmes ordered a handbag which was branded as Chanel merchandise from GoElegant.com.  (Id. ¶ 4.)  Holmes was provided with a contact phone number at the time of purchase which, it was later discovered, belonged to defendant SIP Trading, Inc.  (Id. ¶¶ 5–6.)  At that time, the "payee contact information" on the website listed the phone number as belonging to Go Elegant (the website from which Holmes had purchased the handbag).  (Id. ¶ 5.)  Additionally, Holmes received an e-mail confirmation of his purchase from defendant Baruch Barakat.  (Id. ¶ 5.)  Finally, Holmes attempted to determine to whom the domain name "GoElegant.com" belonged and found that it was registered to defendant Yaron Guetae.  (Id. ¶ 10.)

The handbag was delivered to Holmes' residence in Linwood, New Jersey, in December of 2006.  (Decl. of Robert Holmes, attached as Ex. B to Pls.' Mot. to Establish Personal Jurisdiction; Renewed Mot. for Entry of Final Default J. or Alternatively for Jurisdictional Discover or Transfer of Venue [hereinafter "Second Holmes Decl."] ¶ 9.)  Holmes then forwarded the handbag to a Chanel representative, Adrienne Hahn Sisbarro ("Hahn"), in New York.  (Second Holmes Decl. ¶¶ 9–10.)  Hahn concluded that the handbag Holmes had ordered was counterfeit.  (First Hahn Decl. ¶ 13.)[1]  Additionally, Hahn reviewed a number of computer printouts taken from GoElegant.com and concluded that other Chanel merchandise sold through the website was also counterfeit.  (Id. ¶ 14.)

---

[1] Throughout Plaintiff's submissions, the declaration of Adrienne Hahn Sisbarro is referred to as the "Hahn" declaration.  To avoid confusion, this Court will adopt the same nomenclature.

Plaintiff filed a complaint against defendant SIP Trading, Inc. on July 11, 2007. (Docket No. 1.) A copy of this complaint, along with a summons, was served on SIP Trading, Inc. in August of 2007. (Docket No. 3.) After it failed to respond to the summons, Plaintiff filed a request for entry of default against SIP Trading. (Docket No. 4.) This request was granted and the Clerk entered default against SIP Trading on November 16, 2007.

Plaintiff then filed an amended complaint on January 13, 2008, thereby bringing suit against defendants Baruch Barakat and Yaron Guetae, (Docket No. 6), serving them with a copy of the complaint and summons on February 11, 2008 (Docket Nos. 10 and 11). In May of 2008, Plaintiff filed a request for entry of default against defendants Barakat and Guetae. (Id.) This request was granted on May 20, 2008, and the Clerk entered the default against defendants Barakat and Guetae. Plaintiff then sought default judgment against Defendants on June 19, 2008. (Docket No. 12.)

This Court denied Plaintiff's initial motion without prejudice, finding insufficient grounds to support the exercise of personal jurisdiction over Defendants. Chanel, Inc. v. Guetae, 2009 WL 348501 (D.N.J. Feb. 11, 2009). Plaintiff has now renewed its motion for entry of default judgment. (Docket No. 17.)

## II. STANDARD OF REVIEW

A district court can enter a default judgment pursuant to FED. R. CIV. P. 55(b)(2), which states:

> In all other cases, the party must apply for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative

>    must be served with written notice of the application at least 3 days before
>    the hearing.  The court may conduct hearings or make referrals–preserving
>    any federal statutory right to a jury trial–when, to enter or effectuate
>    judgment, it needs to:
>      (A) conduct an accounting;
>      (B) determine the amount of damages;
>      (C) establish the truth of any allegation by evidence; or
>      (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2).  Further, the ultimate decision whether to enter default judgment in any given case "is left primarily to the discretion of the district court."  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).  See also F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 11 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)).  Default does not establish liability for the amount of damages claimed by the plaintiff.  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.").  "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages.  Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993).  In determining the amount, the district court may conduct a hearing.  FED. R. CIV. P. 55(b)(2).  The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default

4

judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 65 (1944).

### III. JURISDICTION

#### A. Subject Matter Jurisdiction

Since this case involves a dispute regarding trademarks, this Court finds that subject matter jurisdiction is proper under 15 U.S.C. § 1121 ("The district . . . courts of the United States shall have original jurisdiction . . . of all actions [regarding trademarks and arising under Chapter 22 in Title 15 of the United States Code]."), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks.").

#### B. Personal Jurisdiction

In its previous decision, Guetae, 2009 WL 348501, at *2–4, this Court noted that a federal court first looks to the forum state's long-arm statute to determine if personal jurisdiction is permitted over an out-of-state defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). In New Jersey, the long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States. Id. Therefore, in New Jersey, federal law defines the parameters of a court's in personam jurisdiction. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Thus, this Court must determine whether the exercise of jurisdiction violates the Due Process Clause of the

Fourteenth Amendment.  Miller Yacht Sales, 384 F.3d at 96.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that a defendant has purposefully availed itself of the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Personal jurisdiction pursuant to such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum.  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  There must be at least "a single deliberate contact"

6

with the forum state that relates to the cause of action.  <u>United States Golf Ass'n v. United States Amateur Golf Ass'n</u>, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff, however, will not amount to minimum contacts.  <u>Helicopteros Nacionales de Colombia</u>, 466 U.S. at 414; <u>Hansen</u>, 257 U.S. at 253.  Assuming minimum contacts have been established, a court must inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  <u>Burger King Co.</u>, 471 U.S. at 476 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 320 (1945)); <u>see</u> <u>also</u> <u>Pennzoil Prod. Co. v. Colelli & Assoc. Inc.</u>, 149 F.3d 197, 201 (3d Cir. 1998).

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at 292 (1980).  To determine reasonableness, a court considers the following factors: a) the burden on the defendant; b) the forum state's interest in adjudicating the dispute; c) the plaintiff's interest in obtaining convenient and effective relief; d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and e) the shared interest of the several States in furthering substantive social policies.  <u>Id.</u>  Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County</u>, 480 U.S. 102, 116 (1987) (citing <u>Burger King Co.</u>, 471 U.S. at 462).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  <u>Helicopteros Nacionales de Colombia</u>, 466 U.S. at 416.  To

establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

In the instant case, when the Defendants shipped the counterfeit handbag to Holmes' New Jersey residence, they were knowingly interacting with a resident of New Jersey through the GoElegant.com website and, thus, were "'purposefully avail[ing themselves] of conducting activity in the forum state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003). See also Gourmet Video, Inc. v. Alpha Blue Archives, Inc., 2008 WL 4755350, at *4 (D.N.J. Oct. 29, 2008) ("[A] defendant purposefully avails itself of the forum state where the defendant conducts business with the forum state's residents and knowingly ships its products to the forum state."). Thus, having considered Plaintiff's newly submitted affidavits (Docket No. 17), this Court finds that personal jurisdiction can be properly exercised over Defendants.

## IV. ANALYSIS

Defendants have failed to appear, or otherwise plead, in response to the Initial Complaint, which was filed on July 19, 2007 and served on Defendants on August 16, 2007. (Docket Entry Nos. 1–3.) Also, Defendants have failed to appear, or otherwise plead, in response to the First Amended Complaint, which was filed on January 13, 2008 and served on Defendants on March 7, 2008. (Docket Entry Nos. 6, 9–11.) Plaintiff appropriately filed an application for entry of default with this Court, (Docket Entry Nos. 10–11), prior to filing its motion for an entry of default judgment (Docket Entry Nos. 12, 17). This Court finds that default judgment is

appropriate, pursuant to FED. R. CIV. P. 55 (b)(2), on all counts of the First Amended Complaint.

### V. RELIEF

#### A. Permanent Injunction

Plaintiff seeks a permanent injunction against Defendants to prevent future infringement, pursuant to 15 U.S.C. § 1116.  Based on the facts presented in this case — in particular, the scope of the Defendants' website, which purports to sell more than a dozen brands of handbags and other merchandise (Second Holmes Decl., Ex. 1) — this Court finds that such an injunction is necessary to prevent further violation of Plaintiff's trademarks.  15 U.S.C. § 1116(a).

#### B. Damages

Chanel seeks a total of $712,242.45 in damages, pursuant to 15 U.S.C. § 1117.  This amount includes: $702,156.00 in statutory damages;[2] $8,260.00 in reasonable attorneys' fees;

---

[2] Chanel suggested that this Court first start with a baseline award of $8,359.00.  (Mot. for Default J. [hereinafter "First Mot."] 13.)  According to Plaintiff, "[t]his figure was calculated by adding the value of the inventory offered for sale by the Defendants via their Internet website . . . on November 22, 2006 and May 25, 2007, and dividing it by two to find an average."  (First Mot. 13 n.2.)  This amount was then to be trebled, to account for willfulness on Defendants' part.  (First Mot. 13.)  The product of this penultimate operation would then be further multiplied by 14, to account for the number of infringed trademarks.  (Id.)  Finally, Chanel suggested that the product be further "doubl[ed] . . . for the purpose of deterrence."  (Id.)  This Court, in exercising its broad discretion in computing damages, Jones, 990 F.2d at 4, holds that it is unreasonable to double the product for deterrence purposes.

Even assuming *arguendo* that this Court was inclined to award punitive damages, Plaintiff limited its recovery to such damages as could be awarded under the provisions of 15 U.S.C. § 1117.  (First Mot. 15.)  A statute that makes no mention of punitive damages does not authorize an "additional award of punitive damages."  See Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113 (2d Cir. 1988).  See also Caesars World, Inc. v. Venus Lounge, Inc., 520 F.2d 269 (3d Cir. 1975) ("When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied." (quoting Fleischmann Distilling Corp. v. Maier Brewing, Co., 386 U.S. 714, 720 (1967))).  In its discretion under 15 U.S.C. § 1117, this Court finds that the final damage award — close to one half of one million dollars — is sufficient deterrence.

$1,013.95 in reasonable investigative fees; and $812.50 in costs.

Since this Court has a great deal of discretion when computing damages, Jones, 990 F.2d at 4, this Court finds that, pursuant to 15 U.S.C. § 1117, $490,818.45 is a more reasonable amount for the damages owed to Chanel.

In reaching this figure, this Court first calculated reasonable statutory damages under 15 U.S.C. § 1117(c), and then trebled it, pursuant to 15 U.S.C. § 1117(b). That is, pursuant to 15 U.S.C. § 1117(c), this Court looked at the Defendants' website as it appeared on May 25, 2007, (Images of GoElegant.com as it appeared on May 25, 2007, attached as an Ex. I to Pls' Mot. for Entry of Default J. [hereinafter "Ex. I"]), and computed the total value, based on Defendants' own representations, of all 12 varieties of Chanel-branded goods sold ($11,446.00). (Id.) This amount was then multiplied by the number of trademarks that Chanel holds (7), (First Hahn Decl. ¶ 5), and, finally, by the variety of goods sold through Defendants' website (2 — wallets and handbags), (Ex. I). This calculation produced the baseline amount of damages ($160,244.00) under 15 U.S.C. § 1117(c). Pursuant to 15 U.S.C. § 1117(b), the baseline amount was then multiplied by three, as this Court found — based on the scope of Defendants' operation — that Defendants were wilfully engaging in their counterfeiting activities. Thus, the Court reached the final reasonable amount of statutory damages, $480,732.

Since Defendants were willfully engaging in their counterfeiting activities, this Court also finds that an award of reasonable attorneys' fees is proper, pursuant to 15 U.S.C. § 1117(b). In this case, attorneys' fees totaled $8,260.00. (Decl. of Gabriel H. Halpern, attached as Ex. A to Pls.' Mot. for Entry of Default J. [hereinafter "First Halpern Decl."] ¶ 9; Decl. of Stephen M. Gaffigan, attached as Ex. G to Pls.' Mot. for Entry of Default J. ("First Gaffigan Decl.") ¶ 5.)

These rates are equal to or less than the rates for comparable services, and the attorneys made "every reasonable effort" to minimize the hours spent on the case. (First Halpern Decl. ¶ 10; First Gaffigan Decl. ¶ 8.) Chanel is thus entitled to reasonable attorneys' fees in the amount of $8,711.75.

Additionally, Chanel requests that it be paid reasonable investigative fees. Since investigative fees should be considered as part of the attorneys' fees, this Court will award Chanel the total investigative fees for this case. Fila USA v. RunRun Trading Co., No. 95-7144, 1996 U.S. Dist LEXIS 6893, at *11 (S.D.N.Y. 1996); Louis Vuitton S.A. v. Downtown Luggage Ctr., 706 F. Supp. 839, 842 (S.D. Fla. 1988). See also 130 Cong. Rec. H12076, 12083 (Oct. 10, 1984) ("[T]o the extent that an investigator acts under the direction of an attorney . . . his or her fees may be recovered by a prevailing plaintiff as part of an award of attorney fees.") (Joint Explanatory Statement on Trademark Counterfeiting Legislation). The total investigative fees in this case were $1,013.95. (First Holmes Decl. ¶ 15.)

Finally, Chanel requests that this Court award costs, pursuant to 15 U.S.C. § 1117 (a). As this recovery is subject to the "principles of equity," 15 U.S.C. § 1117(a), this Court holds that Chanel should be awarded the sum of the costs incurred by its attorneys in the prosecution of this case. While Chanel asserts that the total costs incurred total $1,097.20, (First Mot. 17), this Court can only find support for an amount of $812.50 in the various exhibits and statements submitted, (First Halpern Decl. ¶ 13; First Gaffigan Decl. ¶ 10.) Thus, this Court will award Plaintiff reasonable costs in the amount of $812.50.

## VI. Conclusion

For the reasons set forth above, this Court shall grant Plaintiff's motion for default judgment and provide Plaintiff with the above-described remedies.


Date: June 5, 2009                                        S/Joseph A. Greenaway, Jr.
                                                          JOSEPH A. GREENAWAY, JR., U.S.D.J.